UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**R&R GAMES, INC.,**

    Plaintiff,

vs.                                          Case No.: 8:12-CV-01957-T-27TBM

**FUNDEX GAMES, LTD. et al.,**

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are the Motion to Dismiss or Transfer (Dkt. 32) and the Memorandum in Support of Motion to Dismiss or Transfer (Dkt. 33) filed by Defendants Smart N.V. ("Smart"), Smart Toys and Games, Inc. ("Smart Tangoes"), Koninklijke Jumbo B.V. ("Jumbo"), Rolf Vandoren, and James Whitney. Plaintiff has responded in opposition (Dkt. 43). Upon consideration, the motion (Dkt. 32) is GRANTED *in part* and DENIED *in part*, and the Amended Complaint (Dkt. 19) is DISMISSED *without prejudice*.

**I.    INTRODUCTION**

R&R makes a puzzle game for children called Hide & Seek Safari (Dkt. 19 ¶ 31). Since 2005, R&R has owned the federally registered mark "HIDE & SEEK SAFARI" (*id.* ¶ 32). R&R recently discovered that similar puzzle games are sold under similar or identical monikers such as "Safari Hide & Seek" and "Hide & Seek Safari" (*id.* ¶ 37). This discovery prompted a lawsuit for trademark infringement (Dkt. 1). The Amended Complaint alleges that Defendants conspired to infringe R&R's mark by selling similar games through third-party interactive websites, including Amazon.com (*see, e.g.*, Dkt. 19 ¶¶ 48-50).

1

Smart is a Belgian entity with its principal place of business in Belgium (Dkt. 19 ¶ 12), and without any offices or agents in Florida (Dkt. 33 at 14 ¶ 2). Its chief executive is Vandoren, who lives in Belgium and has never resided or worked in Florida (*id.* ¶ 1). R&R alleges that Vandoren is also an officer of Smart Tangoes, a Delaware corporation with its principal place of business in San Fransisco, California (Dkt. 19 ¶¶ 7, 8; Dkt. 33 at 16 ¶ 2). Smart Tangoes is a wholly-owned subsidiary of Smart, and its chief executive, Whitney, resides in California and has never lived or worked in Florida (Dkt. 33 at 16 ¶¶ 1, 2). Jumbo distributes products for Smart in the United Kingdom and Germany (*id.* at 19 ¶ 2). Jumbo is a subsidiary of Royal Jumbo Group, a Dutch entity with its principal place of business in the Netherlands and offices in Belgium, Germany, France, Spain, and the United Kingdom (*id.* ¶¶ 1, 2). Jumbo does not ship or distribute products in the United States (*id.* ¶ 2).

Smart, Smart Tangoes, Jumbo, Vandoren, and Whitney move to dismiss the Amended Complaint for lack of personal jurisdiction or transfer the case to the Northern District of California (Dkt. 32).

**II.   PERSONAL JURISDICTION**

Two requirements must be met before personal jurisdiction exists: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute[1] and (2) not violate the Due Process Clause of the Fourteenth Amendment." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The plaintiff bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction. *Id.* (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d

---

[1]The reach of Florida's long-arm statute is a question of Florida law. *See Mazer*, *infra*, at 1274. Federal courts are required to construe the long-arm statute as would the Florida Supreme Court. *Id.* Absent some indication that the Florida Supreme Court would hold otherwise, federal courts are bound to adhere to decisions of Florida's intermediate courts on questions of personal jurisdiction. *Id.*

1209, 1214 (11th Cir. 1999) (per curiam)). Once the defendant challenges personal jurisdiction by submitting evidence in support of its position, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

### A. Florida's Long-Arm Statute

R&R alleges that personal jurisdiction exists "over each named Defendant because they solicit business from consumers in Florida, engage in interstate commerce in the United States and more particularly in the State of Florida, conduct business in Florida and have sold and continue to sell product in Florida, which sales constitute trademark infringement of R&R Games' federally registered mark." (Dkt. 19 ¶ 28). Reading the Amended Complaint in the light most favorable to R&R, it appears that R&R bases personal jurisdiction on Sections 48.193(1)(a), 48.193(1)(b), and 48.193(1)(f) of Florida's long-arm statute. Because an analysis of subsection (1)(b) is dispositive of this motion, only that basis is considered.

Section 48.193(1)(b) permits jurisdiction over a defendant who "committ[ed] a tortious act within this state." Florida's intermediate appellate courts are divided on the reach of subsection (1)(b), and the Florida Supreme Court has refrained from deciding the broader question of "whether injury alone satisfies the requirement of section 48.193(1)(b)." *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1206 n.6 (Fla. 2010). The Eleventh Circuit, noting the division, applies a broad construction of subsection (1)(b), under which courts may exercise personal jurisdiction over a non-resident defendant if a tort committed outside Florida causes injury in Florida. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008); *Posner*, 178 F.3d at 1217.

Utilizing this broad construction, courts within the Eleventh Circuit have consistently held

that allegations of intentional tortious conduct, including trademark infringement, occurring outside Florida are sufficient for long-arm jurisdiction if the plaintiff suffered harm in Florida. *See, e.g.*, *Licciardello*, 544 F.3d at 1283 (holding Section 48.193(1)(b) "permits jurisdiction over the non-resident defendant who commits a tort outside of the state that causes injury inside the state," and allowing personal jurisdiction "if the alleged trademark infringement on the website caused injury in Florida"); *You Fit, Inc. v. Pleasanton Fitness, LLC*, No. 8:12-cv-01917-T-27EAJ, Dkt. 68 (M.D. Fla. Dec. 20, 2012).[2]

R&R alleges that Smart, Smart Tangoes, and Jumbo directly infringed the mark HIDE & SEEK SAFARI (Dkt. 19 ¶¶ 39, 46, 48-50), and that Vandoren and Whitney contributed to that infringement (*id.* ¶¶ 11, 13). Absent contradictory affidavit testimony, these allegations must be accepted as true for purposes of resolving the question of personal jurisdiction. *Posner*, 178 F.3d at 1215 (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). Movants filed three declarations in support of their motion (*see* Dkt. 33 at 14-19). None of the declarations, however, contradict R&R's claims for direct and contributory trademark infringement, nor do they contradict the allegations that Movants' actions caused harm to R&R in Florida.

Vandoren's declaration (Dkt. 33 at 14) avers that Smart "has not engaged in any business activities including advertising campaigns in which it has targeted Florida residents" (*id.* ¶ 5). Smart's lack of business activity targeting Florida residents does not contradict allegations that it infringed R&R's trademark while conducting other business activity, which resulted in harm to R&R

---

[2] *See also VAS Aero Servs., LLC v. Arroyo*, 868 F. Supp. 2d 1374, 1380 (M.D. Fla. 2012) (allegations that non-resident defendant misappropriated Florida company's information over the Internet sufficient under subsection (1)(b)); *KVAR Energy Savings, Inc. v. Tri-State Energy Solutions, LLP*, No. 6:08-cv-85-Orl-19KRS, 2009 WL 103645, at *11 (M.D. Fla. Jan. 15, 2009) (allegations that content infringing trademarks of Florida company was displayed on a website is sufficient under subsection (1)(b)); *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000) (allegations of injury occurring in Florida as a result of trademark infringement are sufficient under subsection (1)(b)).

in Florida. Moreover, the declaration does not address Vandoren's personal activities or the allegations that he contributed to the infringement.

Whitney declares (Dkt. 33 at 16) that Smart Tangoes "has not engaged in any advertising campaigns related to Hide and Seek Safari in which it has targeted Florida residents" and "has never sold the product at issue directly via the internet to any customer located in Florida" (*id.* ¶¶ 4, 8). Not targeting Florida residents with sales or advertising, however, does not preclude the manufacture and sale of infringing products and the use of infringing marks elsewhere, which would cause harm to R&R in Florida.

Whitney's declaration then addresses the exhibits to the Amended Complaint demonstrating the purchase of products with allegedly infringing marks. Whitney avers that "[n]one of the purchases described in the exhibits were made directly from [Smart Tangoes], or from any entity based in Florida. . . . Smart sold products to Amazon in a transaction having no connection with Florida and [Smart Tangoes] has not sold any product to Overstock.com. For the product sold to Amazon, [Smart Tangoes] would have no knowledge regarding or connection to the consumer or ultimate end-user." The relevant question, however, is not whether any of the products with allegedly infringing marks ended up in Florida, but whether Smart Tangoes or Whitney committed a tortious act causing harm in Florida. Because Whitney's declaration does not rebut allegations that he and Smart Tangoes intentionally caused harm to R&R Games in Florida by infringing the trademark, the declaration is insufficient to overcome the allegations of the Amended Complaint.

Bernard Jan Verkoren filed a declaration on behalf of Jumbo (Dkt. 33 at 19). In it, he declares that Jumbo has no offices or employees in the United States and does not ship products or distribute products in the United States (*id.* ¶¶ 1-2). Once again, this averment does not counter or otherwise

challenge the allegations that Jumbo's direct infringement of R&R's mark caused harm to R&R in Florida. In the Amended Complaint, R&R alleges that Jumbo infringed its mark by creating and distributing a YouTube video using the mark (Dkt. 19 ¶ 42). In an attempt to rebut that allegation's import for personal jurisdiction, Verkoren declares that Jumbo posted "an instructional video on You Tube for its UK audience" (Dkt. 33 at 19 ¶ 3). Regardless of its intended audience, Jumbo fails to rebut the allegation that the video infringed R&R's mark and resulted in injury incurred by R&R in Florida.

In sum, none of the declarations contradict R&R's allegations that Movants harmed R&R in Florida by committing direct and contributory trademark infringement. Long-arm jurisdiction is therefore proper over Smart, Smart Tangoes, Jumbo, Vandoren, and Whitney under § 48.193(1)(b).

**B.    Due Process**

After establishing that a state's long-arm statute permits jurisdiction, a plaintiff must also demonstrate that a defendant "has certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

**1.    Minimum Contacts**

The minimum contacts requirement of due process requires that defendants have "fair warning that a particular activity may subject [them] to" foreign jurisdiction and "reasonably anticipate being haled into court" in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977)); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The "fair warning" requirement "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum . . . and litigation results from

6

alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (quoting *Keeton v. Hustler Magazines, Inc.*, 465 U.S. 770, 775 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Id.* at 476 n.18 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

An intentional tort may suffice as the "purposefully directed" "single act" supporting jurisdiction. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984); *Licciardello*, 544 F.3d at 1285; *Exhibit Icons, LLC v. XP Cos., LLC*, 609 F. Supp. 2d 1282, 1298 (S.D. Fla. 2009) ("When an intentional tort is alleged, personal jurisdiction may be supported over a non-resident defendant who has no other contacts with the forum." (citing *Calder*, 465 U.S. at 790)). If allegations reveal "the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum," then the tortfeasors have a substantial connection to the forum under *Calder*. *Licciardello*, 544 F.3d at 1288.

Applying *Calder*, courts assessing allegations of trademark infringement have consistently found the minimum contacts inquiry satisfied because trademark infringement is an intentional tort directed toward the state in which the plaintiff is domiciled. *See, e.g., id.*; *You Fit*, No. 8:12-cv-01917-T-27EAJ, Dkt. 68; *VAS Aero*, 868 F. Supp. 2d at 1380; *Am. Vintage Gun & Pawn, Inc. v. Hogan Mfg., LLC*, No. 8:12-cv-25-T-24MAP, 2012 WL 2366690, at *4 (M.D. Fla. June 21, 2012); *KVAR Energy*, 2009 WL 103645, at *14. In *Licciardello*, the plaintiff sued a Tennessee resident for trademark infringement in the Middle District of Florida, alleging the defendant posted the plaintiff's trademarked name and picture on a website accessible in Florida. *Id.* at 1282. Noting that the defendant's conduct was intentional and calculated to cause harm in Florida, the Eleventh Circuit

held that the defendant had sufficient contacts with Florida under *Calder*. *Id.* at 1287-88.

District courts in the Middle District have followed this rationale. *See, e.g.*, *New Lenox Indus. v. Fenton*, 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007) ("[W]here a defendant's [tortious] conduct is intentionally and purposefully directed as a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum.")[3]; *see also VAS Aero*, 868 F. Supp. 2d at 1380 (allegations of intentional misappropriation sufficient for minimum contacts where the defend would be aware that such conduct would cause harm in Florida); *KVAR Energy*, 2009 WL 103645, at *14 ("[P]ersonal jurisdiction is proper over a defendant who commits an intentional and allegedly tortious act expressly aimed at the plaintiff in the forum state," including trademark infringement aimed at the plaintiff in the plaintiff's home state) (citing *Licciardello*, 544 F.3d at 1285-86).

The Amended Complaint alleges that Movants intentionally misappropriated and infringed R&R's trademark,[4] that the tortious activity was directed at Florida through Internet sales, and that Defendants' activity harmed R&R in Florida. Under *Licciardello*, these allegations create minimum contacts with the Movants "who commit[ted] an intentional and allegedly tortious act expressly aimed at [R&R] in the forum state." *KVAR Energy*, 2009 WL 103645, at *14.

## 2. *Fair Play and Substantial Justice*

Jurisdiction over Movants must also comport with "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 320. In evaluating "fair play and substantial justice," courts consider (1) the burden

---

[3]Citing *Calder*, 465 U.S. at 790; *Posner*, 178 F.3d at 1222; *Silver v. Levinson*, 648 So. 2d 240, 243-44 (Fla. 4th DCA 1994); *Allerton v. State Dep't of Ins.*, 635 So. 2d 36, 40 (Fla. 1st DCA 1994); *Int'l Harvester Co. v. C. Rex Mann*, 460 So. 2d 580, 581-82 (Fla. 1st DCA 1984).

[4]*See Medimport, S.R.I. v. Cabreja*, No. 12-22255-CIV, 2013 WL 443975, at *10 (S.D. Fla. Feb. 5, 2013) (trademark infringement is an intentional tort).

on the defendant, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See Burger King*, 471 U.S. at 477. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (emphasis added).

A "primary concern" of the fairness test is the burden placed on the defendant. *World-Wide Volkswagen*, 444 U.S. at 292. Generally, the burden imposed on out-of-state defendants is not unfair because "'modern transportation and communications have made it much less burdensome'" for a party to defend itself in a foreign jurisdiction. *Burger King*, 471 U.S. at 474 (quoting *McGee*, 355 U.S. at 223). In cases involving international defendants, however, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 114 (1987). Extending jurisdiction over national boundaries requires a "careful inquiry into the reasonableness of the assertion of jurisdiction" and "an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *Id.* at 115; *see also United States v. First Nat'l City Bank*, 379 U.S. 378, 404 (1965) ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field . . . .").

Due process is offended "when the burden placed upon the defendant is incommensurate with the benefits and protections the defendant has received within the forum." *Oldfield v. Pueblo De*

*Bahia Lora, S.A.*, 558 F.3d 1210, 1221 n.30 (11th Cir. 2009). Nevertheless, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burden placed on the alien defendant." *Asahi*, 480 U.S. at 114. Only rarely will the "minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction." *Id.* at 116 (Brennan, J., concurring).

          a.        <u>Jurisdiction is Proper over Smart Tangoes and Whitney</u>.

Jurisdiction over Smart Tangoes and Whitney comports with fair play and substantial justice. Florida has a "'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (quoting *McGee*, 355 U.S. at 223); *see Licciardello*, 544 F.3d at 1288 ("Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida."). "Moreover, where individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities." *Burger King*, 471 U.S. at 474 (quoting *Kulko v. Cal. Superior Ct.*, 436 U.S. 84, 96 (1978)). Any burden on Smart Tangoes and Whitney imposed by traveling to Florida from California is ameliorated by "modern methods of transportation and communication." *McGee*, 355 U.S. at 223; *Stubbs*, 447 F.3d at 1364. R&R's interest in obtaining complete and effective relief from an alleged international conspiracy of trademark infringement is vindicated by exercising jurisdiction over Smart Tangoes and Whitney. Finally, the several States share an equal interest in preventing trademark infringement and Florida's interest in protecting its residents from infringement overcomes another forum's interest in adjudicating this dispute. Smart Tangoes and Whitney have not "presented the requisite 'compelling case' that exercising jurisdiction

would be constitutionally unfair." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1274 (11th Cir. 2010) (quoting *Burger King*, 471 U.S. at 477).

### b. Jurisdiction is Proper over Smart and Vandoren.

Nor are fair play and substantial justice offended by the exercise of jurisdiction over Smart and Vandoren. Although both are alien defendants, they have not presented a "compelling case" of considerations precluding jurisdiction. An international locale alone is insufficient to overcome Florida's "manifest interest" in resolving this dispute and R&R's interest in obtaining complete and effective relief. *McGee*, 355 U.S. at 223; *see Tharo Sys., Inc. v. Cab Produkktechnik GMBH & Co. KG*, 196 Fed. Appx. 366, 372 (6th Cir. 2006).

Determining whether personal jurisdiction comports with fair play and substantial justice requires a balancing of the relative burdens on the plaintiff and the international defendant. *See Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1552 (11th Cir. 1993); *ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 393 (4th Cir. 2012). While alien defendants are burdened by litigating in the United States, *Asahi*, 480 U.S. at 114, the hardship imposed on Smart and Vandoren is mitigated by the location of a wholly owned subsidiary, Smart Tangoes, in the United States and Vandoren's position as a director and officer of Smart Tangoes. *See Vermeulen*, 985 F.2d at 1552 (exercise of jurisdiction over French company comports with due process in part because of a wholly owned subsidiary in the United States). Also, Smart and Vandoren share a lawyer with Smart Tangoes and Whitney, suggesting that any burden they might have in litigating in the United States is ameliorated. *See Nuance Comms., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1234 (Fed. Cir. 2010) ("Abbyy Production and Abbyy USA share the same counsel and operate under a consolidated Global Management Team. These relationships should ameliorate any possible burden of litigating

in California.").

Smart and Vandoren's travel to the United States for trade shows suggests that the travel aspect of litigating in Florida is not unduly burdensome. *See Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009) ("In addition, for at least the last five years, GMReis representatives have traveled to the United States for, among other things, trade shows, which suggests that, as far as GMReis is concerned, travel itself is not unduly burdensome."); *Dole Food Co. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002) (defendants' business travel to the United States in the past weighs in favor of jurisdiction); *Pro Axess, Inc. v. Orlux Distr., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005) (holding that, although French corporation was a "substantial distance" from the forum state of Utah, the corporate president's demonstrated ability to travel to the United States for company's business dealings minimized concerns that litigating in Utah may burden corporation). And, modern means of communication and travel further reduce the burden of litigating in Florida. *See U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1547 (11th Cir. 1997) (holding that "modern methods of transportation and communication" ameliorate the burden imposed on an international litigant).

Even if a real burden exists, it is outweighed by the burden facing R&R if it is forced to litigate in Belgium. *Id.* (citing *Delong Equipment Co.*, 840 F.2d at 850, 854) (burden on plaintiff of having to litigate in France far outweighed any burden placed on the French company litigating in the United States). Smart and Vandoren have not demonstrated that "the assertion of jurisdiction in the forum will make litigation so gravely difficult and inconvenient that [they] unfairly [are] at a severe disadvantage in comparison to [their] opponent." *Rep. of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir. 1997) (internal quotations omitted).

Smart and Vandoren's status as international litigants does not diminish Florida's "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *Burger King*, 471 U.S. at 473. Fair play and substantial justice are also served by exercising jurisdiction because R&R would not be able to obtain convenient and effective relief without Smart and Vandoren. Smart and Vandoren are allegedly involved in the manufacture and sale of products that infringe R&R's trademark. Vandoren and Smart purposefully availed themselves of the privileges of Florida by selling through the Internet and shipping into Florida allegedly infringing products. *See Staton v. Husky Computers, Inc.*, 176 F.3d 484, 1998 WL 808019, at *4 (9th Cir. Nov. 18, 1998). Allowing them to escape the court's reach would decrease the overall effectiveness of any relief granted to R&R.

Finally, jurisdiction in the Middle District of Florida presents the opportunity for the most efficient resolution of this case. Although evidence and witnesses relating to Smart and Vandoren's participation in trademark infringement are likely located in Belgium, this case involves numerous defendants located in multiple jurisdictions, both international and domestic. Moving the dispute to one of those foreign jurisdictions would not encourage a more efficient resolution of this matter.

Balancing all of the *Burger King* factors, the burden imposed on Smart and Vandoren is mitigated by several circumstances, the burden on R&R of litigating in Belgium outweighs Smart and Vandoren's burden of litigating in Florida, Florida has a manifest interest in resolving this dispute, and the effective resolution of this matter is encouraged by exercising jurisdiction over Smart and Vandoren. Fair play and substantial justice, therefore, are not offended by subjecting Smart and Vandoren to jurisdiction in Florida.

Vandoren argues that he is not subject to personal jurisdiction simply because Smart is

alleged to have participated in trademark infringement. This argument, however, overlooks the Supreme Court's decision in *Calder*. The Supreme Court held that the individual defendants, a magazine editor and reporter, were "primary participants in [the] alleged wrongdoing" of circulating an allegedly libelous article in another state, and held jurisdiction proper even though it was their corporate employer that actually published and distributed the tabloid. 465 U.S. at 1487-88. R&R alleges that Vandoren "directed, actively participated in, controlled and benefitted from the conduct of" Smart and Smart Tangoes, and "induced and directed" Smart and Smart Tangoes to infringe R&R trademark (Dkt. 19 ¶¶ 9, 13). These allegations sufficiently present Vandoren as a "primary participant[] in [the] alleged wrongdoing" of trademark infringement, and therefore favor jurisdiction. *Calder*, 465 U.S. at 1488.

      c. <u>Jurisdiction over Jumbo Offends Fair Play and Substantial Justice.</u>

Jumbo, however, lacks any connection to the United States and Florida outside of R&R's allegations. It does not conduct business in the United States, does not have a subsidiary in the United States, and has not purposefully availed itself of Florida's laws because its alleged trademark infringement was directed not at Florida, but the United Kingdom. That Jumbo's actions were directed to the United Kingdom, rather than Florida, allows for only minimal interests on Florida's part in asserting jurisdiction over Jumbo. *Cf. Asahi*, 480 U.S. at 114. When such a minimal interest is present, the "[f]ederal interest in the Government's foreign relations policies" often counsels "an unwillingness to find the serious burdens on an alien defendant outweighed by the minimal interests on the part of the plaintiff or the forum State." *Id.* at 115. Unlike *Asahi*, however, R&R is a United States citizen and resident of the state of Florida. This fact amplifies Florida's interest in resolving the dispute. *See Vermeulen*, 985 F.2d at 1551 (holding Georgia's interest to be "manifest" in

remedying the "crippling injuries" plaintiff suffered as a result of an alleged defect in the international defendant's car).

Jumbo's officers have no reason to expect or predict that it would be haled into court in the United States, let alone in Florida. It distributes products for Smart, not Smart Tangoes, in the United Kingdom and Germany, and its parent organization has no presence in the United States. R&R's interests in resolving its dispute with Jumbo are minimized because Verkoren's declaration indicates that the infringing video has already been removed from YouTube. Florida lacks an interest in disciplining a foreign company that has never directed any activity into the state. *See Foster v. Arletty 3 Sarl*, 278 F.3d 409, 415 (4th Cir. 2002) ("[T]raditional notions of fair play and substantial justice are offended by requiring a non-resident to defend itself in a forum when the non-resident never purposefully availed itself of the privilege of conducting activities within the forum, thus never invoking the benefits and protections of its laws."). Moreover, because Jumbo is merely a distributor of the allegedly infringing products, rather than a producer or seller, R&R can obtain full and effective relief without the participation of Jumbo in this lawsuit. The burden on Jumbo is "severe" in that its representatives must travel from Europe to Florida to participate in this lawsuit. *Asahi*, 480 U.S. at 114. Although this burden can be mitigated by modern means of conveyance and communication, traveling long, international distances weighs against a finding of fair play and substantial justice. *See id.* at 114 (holding the exercise of personal jurisdiction did not comport with fair play and substantial justice because, among other things, Asahi had to "traverse the distance between [its] headquarters in Japan and the Superior Court of California").

Put simply, "the burden placed upon [Jumbo] is incommensurate with the benefits and protections" Jumbo has received from Florida having never directed any activity into the state.

*Oldfield*, 558 F.3d at 1221.

Accordingly, the exercise of personal jurisdiction over Smart, Smart Tangoes, Whitney, and Vandoren comports with due process, but personal jurisdiction over Jumbo does not.

### III. TRANSFER

Having determined that the exercise of personal jurisdiction over Smart, Smart Tangoes, Whitney, and Vandoren is proper, it is appropriate to consider whether this case should be transferred to the Northern District of California. Under 28 U.S.C. § 1404(a), a case may be transferred to any other district where it might have been brought originally for the convenience of parties and witnesses and in the interest of justice.[5] To determine whether transfer is appropriate, nine factors are considered:

> (1) the convenience of the witnesses;
> (2) the location of relevant documents and the relative ease of access to sources of proof;
> (3) the convenience of the parties;
> (4) the locus of operative facts;
> (5) the availability of process to compel the attendance of unwilling witnesses;
> (6) the relative means of the parties;
> (7) a forum's familiarity with the governing law;
> (8) the weight accorded a plaintiff's choice of forum; and
> (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). Movants have the burden to establish that the Northern District of California is more convenient. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). As a preliminary matter, Movants are the only Defendants requesting transfer of this case. Notably, California Guest Services, Inc., the other Defendant located in California, has answered the Amended Complaint, evidencing satisfaction with this forum (Dkt. 36).

---

[5] R&R does not contest Movants' assertion that this case could have been brought originally in the Northern District of California.

Movants argue that the convenience of witnesses weighs heavily in favor of transfer, but it does not. Movants have considered only the witnesses relevant to the claims against Smart Tangoes and Whitney, and have failed to consider the convenience of witnesses relevant to the claims against the other Defendants located in Canada, Indiana, Belgium, Arkansas, Illinois, Indonesia, Michigan, and Kentucky. In the same vein, relevant documents are not likely to be confined to California, but rather at the principal places of business of all of the Defendants and R&R.

Nor is the convenience of the parties better served by transferring the case to California. While Movants and California Guest Services are located in California, Defendants traveling from Belgium, Arkansas, Illinois, Michigan, and Kentucky will find Florida more convenient than California because flights from each of those locations are shorter to Tampa, Florida, than to San Francisco, California. *Cf. U.S. v. Merrill*, 513 F.3d 1293, 1304-05 (11th Cir. 2008) (affirming the district court's assessment of convenience based on duration of air travel); *Portal Techs. LLC v. IAC/Interactivecorp*, No. 2:11-cv-429-JRG-RSP, 2012 WL 3494826, at *3 (E.D. Tex. Aug. 15, 2012) (finding the Eastern District of Texas to be more convenient where parties and witnesses are scattered across the country, even though the plurality of parties are located in New York). This factor is therefore slightly in favor of the Middle District of Florida. The fourth and fifth factors are neutral, as the operative facts in this case are spread across the world, and there is no evidence regarding whether process to compel the attendance of unwilling witnesses is more likely to be available in a case in the Middle District of Florida or the Northern District of California. The record likewise does not contain any evidence regarding the relative means of the parties, rendering the sixth factor neutral as well.

The seventh factor is also neutral because courts in the Middle District of Florida and the

Northern District of California are equally familiar with the federal law governing this dispute. As for the ninth factor, efficiency and the interests of justice, Movants cite statistics purporting to show that the Northern District of California more efficiently disposes of pending cases than the Middle District of Florida. Those statistics, however, fail to demonstrate how *this case* would be more efficiently adjudicated if transferred to the Northern District of California, and in any event, "whether one court would move any given case to trial faster is 'speculative,' because 'case-disposition statistics may not always tell the whole story.'" *In re Apple, Inc.*, 602 F.3d 909, 915 (8th Cir. 2010) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)). Docket congestion is a factor that may be considered, but it is not dispositive and it cannot outweigh other factors of convenience. *Id.* (citing *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 808 (11th Cir. 2003)).

The final factor to be considered, R&R's choice of forum, weighs heavily against transfer. Although it is not dispositive, *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1293 (11th Cir. 2009), the "'plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations' and a transfer that would only shift inconvenience from the defendant to the plaintiff does not outweigh the plaintiff's choice." *S.E.C. v. Lauer*, 478 Fed. Appx. 550, 554 (11th Cir. 2012) (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)).

On balance, Movants have not sustained their burden of demonstrating that litigating this case in the Northern District of California would be more convenient, nor have they shown that other considerations "clearly outweigh" R&R's choice of forum. Movants' request to transfer the case, therefore, will be denied.

IV.  **THE AMENDED COMPLAINT IS A "SHOTGUN" PLEADING**

While the Amended Complaint contains sufficient allegations to assess personal jurisdiction and convenience of the parties, it does not fully comply with the Federal Rules of Civil Procedure. The Amended Complaint appears to assert claims for direct trademark infringement, contributory trademark infringement, and conspiracy in one count titled "Federal Trademark Infringement," making it difficult to discern what claims R&R is asserting against each Defendant. This is a hallmark of a "shotgun" pleading, and R&R is required to replead its claims in a manner consistent with the Federal Rules of Civil Procedure. *Ledford v. Peeples*, 657 F.3d 1222, 1239 (11th Cir. 2011).

## CONCLUSION

Defendants Smart, Smart Tangoes, Whitney, and Vandoren are subject to personal jurisdiction in Florida under § 48.193(1)(b). The exercise of jurisdiction over Jumbo, however, would violate due process, and Defendants have not demonstrated that transfer to the Northern District of California would be more convenient. Accordingly,

1) The Motion to Dismiss or Transfer (Dkt. 32) is GRANTED *in part* and DENIED *in part*. Defendant Koninklijke Jumbo B.V. is DISMISSED *without prejudice*. The Clerk is directed to TERMINATE Koninklijke Jumbo B.V. from the docket.

2) The Amended Complaint (Dkt. 19) is DISMISSED *without prejudice*. Plaintiff shall file a Second Amended Complaint within **fourteen (14) days** of the date of this order.

**DONE AND ORDERED** this 28TH day of February, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record