UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

R&R GAMES, INC.,

   Plaintiff,

vs.            Case No.: 8:12-cv-01957-JDW-TBM

FUNDEX GAMES, LTD. et al.,

   Defendants.

_____/

## ORDER

  **BEFORE THE COURT** are the Voigt Defendants' Motion to Dismiss (Dkt. 86) filed by

Defendants Carl E. Voigt, III and Carl E. Voigt, IV, and Defendants' Motion to Dismiss (Dkt. 88),

filed by Defendants Rolf Vandoren, James B. Whitney, Smart N.V., Smart Toys and Games, Inc.,

Carl E. Voigt, III, and Carl E. Voigt, IV. Plaintiff has responded in opposition to both (Dkts. 90, 91),

and the Voigt Defendants have filed a reply in support of their motion (Dkt. 99). Upon consideration,

the Voigt Defendants' Motion to Dismiss (Dkt. 86) is GRANTED *in part* and DENIED *in part*, and

the Defendants' Motion to Dismiss (Dkt. 88) is GRANTED *in part* and DENIED *in part*.

## I. THE VOIGT DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Introduction

  R&R makes a puzzle game for children called Hide & Seek Safari and owns the federally

registered mark HIDE & SEEK SAFARI. Dkt. 77 ¶¶ 31, 32. R&R recently discovered that similar

puzzle games are sold under monikers such as "Safari Hide & Seek" and "Hide & Seek Safari." *Id.*

¶ 37. This discovery prompted a lawsuit for trademark infringement. The Second Amended

Complaint alleges that Defendants conspired to infringe R&R's mark by manufacturing and selling

1

similar games through third-party interactive websites, including Amazon.com. *See, e.g., id.* ¶¶ 44, 47–50.

Defendant Fundex Games, Ltd. is an Indiana corporation with its principal place of business in Tampa, Florida. *Id.* ¶ 2. Defendants Carl E. Voigt, III ("Pete Voigt") and Carl E. Voigt, IV ("Chip Voigt") live in Indiana and are alleged to be officers and directors of Fundex who actively control the business of Fundex, including the acts leading to the alleged trademark infringement *Id.* ¶¶ 3–6.

R&R alleges that Fundex sold games under the "Safari Hide & Seek" and "Hide & Seek Safari" names, in violation of the R&R trademark. *Id.* ¶ 39. R&R sent Fundex a cease-and-desist letter demanding that Fundex cease using and distributing the similarly named games and puzzles. *Id.* ¶ 40. Although Fundex allegedly agreed to discontinue production, R&R alleges that Fundex continues to "manufacture, promote, distribute and sell infringing games." *Id.* ¶¶ 41, 44. R&R has allegedly purchased "infringing goods" sold by or under the direction of Fundex on Amazon.com and in Ft. Lauderdale, Florida. *Id.* ¶ 47. R&R accordingly sued Fundex for trademark infringement (*id.* ¶ 64), inducement of trademark infringement (*id.* ¶ 78), contributory infringement (*id.* ¶ 91), and conspiracy to commit trademark infringement (*id.* ¶ 98). Pete Voigt and Chip Voigt were sued in their individual capacity for inducement of trademark infringement (*id.* ¶ 81), contributory infringement (*id.* ¶ 93), and conspiracy to commit trademark infringement (*id.* ¶ 98).[1]

Pete Voigt and Chip Voigt move to dismiss the Second Amended Complaint for lack of personal jurisdiction (Dkt. 86).

---

[1]R&R argues that it has alleged direct trademark infringement against "all named Defendants." Dkt. 90 at 15. As discussed *infra*, however, Count I of the Second Amended Complaint does not allege direct infringement against the Voigts. At most, it generally alleges a conspiracy to commit trademark infringement, without specific allegations against the individual defendants. *See* Dkt. 77 ¶ 71 ("Upon information and belief, Defendants . . . VOIGT III [and] VOIGT IV . . . *conspired together to initiate* a coordinated marketplace penetration of the infringing game bearing the confusingly similar name(s) . . . .") (emphasis added).

**B.**   **Discussion**

Two requirements must be met for personal jurisdiction: "the exercise of jurisdiction must (1) be appropriate under the long-arm statute[2] and (2) not violate the Due Process Clause of the Fourteenth Amendment." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The plaintiff bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction. *Id.* (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (per curiam)). At this point, the plaintiff's factual allegations are accepted as true, unless those allegations are contested by a defendant's affidavit. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). If contested, all reasonable inferences are drawn in favor of the plaintiff. *Id.* Once the defendant challenges personal jurisdiction by submitting evidence, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

### 1.   *Florida's Long-Arm Statute*

Florida's long-arm statute provides two categories of personal jurisdiction: specific jurisdiction under section 48.193(1) and general jurisdiction under section 48.193(2). R&R does not allege that the Voigts are subject to general jurisdiction, only specific jurisdiction. R&R's allegations suggest two bases of specific jurisdiction over the Voigts. First, the Second Amended Complaint alleges that the Voigts "solicit business from consumers in Florida, engage in interstate commerce . . . in the State of Florida, [and] conduct business in Florida." Dkt. 77 ¶ 28. These allegations suggest personal jurisdiction under subsection 48.193(1)(a), which allows long-arm jurisdiction over

---

[2]The reach of Florida's long-arm statute is a question of Florida law. *See Mazer*, *infra*, at 1274. Federal courts are required to construe the long-arm statute as would the Florida Supreme Court. *Id.* Absent some indication that the Florida Supreme Court would hold otherwise, federal courts are bound to adhere to decisions of Florida's intermediate courts on questions of personal jurisdiction. *Id.*

any person who is "[o]perating, conducting, engaging in, or carrying on a business or business venture" in Florida. Second, R&R alleges that the Voigts committed "a tortious act" in Florida, suggesting jurisdiction under subsection 48.193(1)(b).

a.      **Section 48.193(1)(b) - Committing a Tortious Act in Florida**

Section 48.193(1)(b) permits jurisdiction over a defendant who "committ[ed] a tortious act within this state." Florida's intermediate appellate courts are divided on the reach of subsection 48.193(1)(b), and the Florida Supreme Court has refrained from deciding the broader question of "whether injury alone satisfies the requirement of section 48.193(1)(b)." *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1206 n.1 (Fla. 2010). The Eleventh Circuit applies a broad construction of subsection (1)(b), under which courts may exercise personal jurisdiction over a non-resident defendant if a tort committed outside Florida causes injury in Florida. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008); *Posner*, 178 F.3d at 1217.

Utilizing this broad construction, courts within the Eleventh Circuit have consistently held that allegations of intentional tortious conduct, including trademark infringement, occurring outside Florida are sufficient for long-arm jurisdiction if the plaintiff suffered harm in Florida. *See, e.g.*, Dkt. 74 at 6; *Licciardello*, 544 F.3d at 1283 (holding section 48.193(1)(b) "permits jurisdiction over the non-resident defendant who commits a tort outside of the state that causes injury inside the state," and allowing personal jurisdiction "if the alleged trademark infringement on the website caused injury in Florida"); *You Fit, Inc. v. Pleasanton Fitness, LLC*, No. 8:12-cv-01917-T-27EAJ, Dkt. 68 (M.D. Fla. Dec. 20, 2012).[3]

---

[3]*See also VAS Aero Servs., LLC v. Arroyo*, 868 F. Supp. 2d 1374, 1380 (M.D. Fla. 2012) (allegations that non-resident defendant misappropriated Florida company's information over the Internet is sufficient under subsection (1)(b)); *KVAR Energy Savings, Inc. v. Tri-State Energy Solutions, LLP*, No. 6:08-cv-85-Orl-19KRS, 2009 WL 103645, at *11 (M.D. Fla. Jan. 15, 2009) (allegations that content infringing trademarks of Florida company was displayed on a website is sufficient under subsection (1)(b)); *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000)

R&R alleges that the Voigts committed in Florida the torts of inducement of trademark infringement, contributory infringement, and conspiracy to infringe in Florida. Absent contradictory affidavits, these allegations would be accepted as true for purposes of resolving the question of personal jurisdiction, *Posner*, 178 F.3d at 1215 (citing *Madara*, 916 F.2d at 1514). However, the Voigts have submitted affidavits contesting those allegations. *See* Dkts. 87-1, 87-2, 99-1.

       i.     <u>Pete Voigt</u>

Pete Voigt avers that after he retired from Fundex in 2005, he "played no role" in the company's daily operations. Dkt. 87-1 ¶ 2. He further avers that after his retirement, he did not "direct, control or have any involvement with any of Fundex' [*sic*] sales or other business activities, including advertising," although he admits that he remained listed as the secretary and treasurer of Fundex. *Id.* Pete Voigt also states that he was unaware of R&R until this litigation commenced, and that he was not "involved in any decisions made by Fundex in response to R&R's cease and desist letter." *Id.* ¶ 9.

Pete Voigt's affidavit sufficiently rebuts the pertinent jurisdictional allegations of R&R. The Second Amended Complaint alleges that Pete Voigt contributed to and induced infringement of R&R's trademark by causing other Defendants to "sell and/or distribute and/or approve or place advertisements of Accused Products." Dkt. 77 ¶¶ 81, 93, 94. Pete Voigt is alleged to have committed these torts while acting "within the course and scope of [his] employment or agency relationship with" Fundex. Voigt's affidavit rebuts these allegations by averring that he retired from Fundex in 2005, played "no role" in Fundex's daily operations, and did not have "any involvement" with sales or advertising by Fundex. Dkt. 87-1 ¶ 2. R&R's allegations of conspiracy to commit trademark

---

(allegations of injury occurring in Florida as a result of trademark infringement are sufficient under subsection (1)(b)).

infringement against Pete Voigt (Dkt. 77 ¶¶ 98, 99) are likewise rebutted by the averment that Voigt had "never heard of R&R Games" prior to this lawsuit (Dkt. 87-1 ¶ 9) and by Voigt's averments disclaiming any involvement in the business activities of Fundex (*id.* ¶ 2).

After successful rebuttal of the jurisdictional allegations, the burden shifts to R&R to produce evidence supporting jurisdiction. *Meier*, 288 F.3d at 1269. In that vein, R&R submits the declaration of Robert C. Kain, Jr. Dkt. 90-1 ¶ 2. The whole of Kain's declaration is a statement that Pete Voigt is the corporate secretary and treasurer of FGL, Inc., a successor entity of Fundex. *Id.* ¶ 9. This is insufficient to carry R&R's burden of proving jurisdiction. The declaration does not counter Pete Voigt's averments that he plays no role in Fundex's operations and that he had no knowledge of R&R. His position as corporate secretary and treasurer of a different entity does not imply active engagement in the matters and conduct of Fundex, even when taken in the light most favorable to R&R. R&R has therefore failed to demonstrate that Pete Voigt is subject to specific long-arm jurisdiction under section 48.193(1)(b).

     ii.     <u>Chip Voigt</u>

The allegations against Chip Voigt are identical to those against Pete Voigt. *See* Dkt. 77 ¶¶ 81, 82, 93, 94, 98, 99. Chip Voigt also submitted an affidavit challenging the allegations, in which he acknowledges his position as President and CEO of Fundex, but avers that Fundex stopped selling its game 'Safari Hide & Seek' when it received the cease and desist letter from R&R. Dkt. 87-2 ¶¶ 2-3. He further avers that Fundex did not have control over products sold to Amazon after receiving the cease and desist letter. *Id.* ¶ 4. Chip Voigt also discusses his personal business activity, averring that he does "not now personally sell . . . goods or services in Florida," nor has he ever done so, and that he does not conduct any personal business in Florida. *Id.* ¶ 6.

Unlike that of Pete Voigt, Chip Voigt's affidavit does not rebut the allegations in the Second Amended Complaint. The fact that Fundex stopped selling its allegedly infringing game and did not control a subset of the infringing product at a given time does not result in the conclusion that Fundex did not infringe R&R's trademark or that Chip Voigt did not induce or contribute to trademark infringement. Moreover, a dearth of personal business dealings does not eliminate personal jurisdiction for conduct at the helm of Fundex. *See Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993) ("A corporate officer committing . . . intentional misconduct can be subject to personal jurisdiction . . . .").

Chip Voigt argues that R&R's allegations do not establish personal jurisdiction because they do not demonstrate that he was a "primary participant" in the alleged wrongdoing, as required by *Calder v. Jones*, 465 U.S. 783 (1984). He contends that the allegations underlying his participation in the alleged trademark infringement are vague and conclusory and cannot demonstrate the manner in which he "directed, actively participated in or controlled" the alleged infringement by Fundex. This argument slightly misses the point of R&R's complaint. R&R is not alleging that Chip Voigt's liability arises merely as a consequence of his position as President of Fundex. Instead, R&R alleges that Chip Voigt is personally liable for inducing infringement, contributory infringement, and conspiracy to commit infringement.

Chip Voigt further argues that *Calder*'s proper reach is demonstrated in *Health Science Distributors, Co. v. Usher-Sparks*, No. 6:10-cv-1797-Orl-31KS, 2012 WL 921338 (M.D. Fla. Feb. 29, 2012).[4] In that case, the Magistrate recommended the dismissal of two corporate officers for lack of personal jurisdiction pursuant to the corporate shield doctrine. The officers lived in England and

---

[4]Report and Recommendation adopted by *Health Sci. Distributors, Co. v. Usher-Sparks*, Case No. 6:10-cv-1797-Orl-31KRS, 2012 WL 919812 (M.D. Fla. Mar. 19, 2012).

7

the *only* basis on which the plaintiff sought to exercise jurisdiction was their official position with the corporate defendant. The Magistrate found that personal jurisdiction over corporate officers does not automatically flow from exercising jurisdiction over the corporation, and in the absence of any "direct, personal involvement in the alleged trademark infringement," the officers were to be dismissed. *Id.* at *5 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)).

Voigt is correct that officers of corporations are shielded from personal jurisdiction where their position in the corporation is the only fact alleged to confer jurisdiction. *See Doe*, 620 So. 2d at 1006; *Delong Equipment Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 851 (11th Cir. 1988). That rule, however, is subject to exceptions for intentional tortious conduct by the officers or personal participation in the entity's tortious conduct. *Doe*, 620 So. 2d at 1006 n.1; *Delong*, 840 F.2d at 851. In *Health Science*, those exceptions did not apply because the complaint contained no allegations concerning the officers' individual conduct.

R&R's allegations are substantively different than those in *Health Science*. R&R has alleged intentional misconduct by Chip Voigt in the form of inducing and contributing to infringement, as well as personal participation in a conspiracy to commit trademark infringement. Because his affidavit does not rebut these allegations, R&R has sufficiently alleged long-arm jurisdiction under section 48.193(1)(b). *See Posner*, 178 F.3d at 1217 (Section 48.193(1)(b) is construed broadly to "apply to defendants committing tortious acts outside the state that cause injury in Florida.").

**b.      Section 48.193(1)(a) - Conducting Business in Florida[5]**

The Second Amended Complaint, in conclusory fashion, alleges that Pete Voigt conducts business in Florida as a basis for personal jurisdiction. Dkt. 77 ¶ 28. A conclusory allegation cannot

---

[5]Because R&R has sufficiently alleged personal jurisdiction over Chip Voigt under section 48.193(1)(b), the remaining basis for specific jurisdiction, section 48.193(1)(a), need not be addressed as to Chip Voigt.

serve as the basis for personal jurisdiction, however. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) ("[V]ague and conclusory allegations . . . are insufficient to establish a prima facie case of personal jurisdiction . . . ."). R&R has therefore failed to plead a prima facie case of specific jurisdiction against Pete Voigt under section 48.193(1)(a). Even if the allegation were not conclusory and R&R had stated a *prima facie* case of jurisdiction, Pete Voigt avers that he has never conducted personal business in Florida, sufficiently rebutting R&R's allegation. Dkt. 87-1 ¶ 4.

Because R&R has failed to demonstrate the application of Florida's long-arm statute to Pete Voigt, the due process inquiry need not be reached. Pete Voigt will be dismissed for lack of personal jurisdiction.

### 2.    *Due Process*

After establishing that Florida's long-arm statute permits jurisdiction over Chip Voigt, R&R must now demonstrate that he "has certain minimum contacts with [Florida] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### a.    <u>Minimum Contacts</u>

The minimum contacts requirement of due process requires that defendants have "fair warning that a particular activity may subject [them] to" foreign jurisdiction and "reasonably anticipate being haled into court" in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977)); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The "fair warning" requirement "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum . . . and litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (quoting

*Keeton v. Hustler Magazines, Inc.*, 465 U.S. 770, 775 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Id.* at 476 n.18 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

An intentional tort may suffice as the "purposefully directed" "single act" supporting jurisdiction. *See Calder*, 465 U.S at 789–90; *Licciardello*, 544 F.3d at 1285; *Exhibit Icons, LLC v. XP Cos., LLC*, 609 F. Supp. 2d 1282, 1298 (S.D. Fla. 2009) ("When an intentional tort is alleged, personal jurisdiction may be supported over a non-resident defendant who has no other contacts with the forum." (citing *Calder*, 465 U.S. at 790)). If the allegations reveal "the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum," then the tortfeasor has a substantial connection to the forum under *Calder*. *Licciardello*, 544 F.3d at 1288.

Applying *Calder*, courts assessing allegations of trademark infringement have consistently found the minimum contacts inquiry satisfied because trademark infringement is an intentional tort directed toward the state in which the plaintiff is domiciled. *See, e.g., id.*; Dkt. 74 at 8; *You Fit*, No. 8:12-cv-01917-T-27EAJ, Dkt. 68; *VAS Aero*, 868 F. Supp. 2d at 1380; *Am. Vintage Gun & Pawn, Inc. v. Hogan Mfg., LLC*, No. 8:12-cv-25-T-24MAP, 2012 WL 2366690, at *4 (M.D. Fla. June 21, 2012); *KVAR Energy*, 2009 WL 103645, at *14. In *Licciardello*, the plaintiff sued a Tennessee resident for trademark infringement in the Middle District of Florida, alleging the defendant posted the plaintiff's trademarked name and picture on a website accessible in Florida. 544 F.3d at 1282. Noting that the defendant's conduct was intentional and calculated to cause harm in Florida, the Eleventh Circuit held that the defendant had sufficient contacts with Florida under *Calder*. *Id.* at

1287–88.

District courts in the Middle District have followed this rationale. *See, e.g.*, *New Lenox Indus. v. Fenton*, 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007) ("[W]here a defendant's [tortious] conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum.")[6]; *see also VAS Aero*, 868 F. Supp. 2d at 1380 (allegations of intentional misappropriation sufficient for minimum contacts where the defendant would be aware that such conduct would cause harm in Florida; *KVAR Energy*, 2009 WL 103645, at *14 ("[P]ersonal jurisdiction is proper over a defendant who commits an intentional and allegedly tortious act expressly aimed at the plaintiff in the forum state," including trademark infringement aimed at the plaintiff in the plaintiff's home state.).

The Second Amended Complaint alleges that Chip Voigt induced infringement of and contributorily infringed R&R's trademark in an intentional manner,[7] that the tortious activity was purposefully directed at R&R in Florida, and that Chip Voigt's activity harmed R&R in Florida. Under *Calder* and *Licciardello*, these allegations create minimum contacts with Chip Voigt "who commit[ted] an intentional and allegedly tortious act expressly aimed at [R&R] in the forum state." *KVAR Energy*, 2009 WL 103645, at *14.

**b.**     **Fair Play and Substantial Justice**

Jurisdiction over Chip Voigt must also comport with "fair play and substantial justice." *Int'l*

---

[6]Citing *Calder*, 465 U.S. at 790; *Posner*, 178 F.3d at 1222; *Silver v. Levinson*, 648 So. 2d 240, 243-44 (Fla. 4th DCA 1994); *Allerton v. State Dep't of Ins.*, 635 So. 2d 36, 40 (Fla. 1st DCA 1994); *Int'l Harvester Co. v. Mann*, 460 So. 2d 580, 581–82 (Fla. 1st DCA 1984).

[7]*See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) (describing the active and intentional nature of inducement of infringement); *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1245 (11th Cir. 2007) (contributory infringement is an "intentional or knowing contribution" to trademark infringement).

*Shoe*, 326 U.S. at 320. In evaluating "fair play and substantial justice," courts consider (1) the burden on the defendant, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several state in furthering fundamental substantive social police. *See Burger King*, 471 U.S. at 477. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (emphasis added). Only rarely will the "minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction." *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 116 (1987) (Brennan, J., concurring).

A "primary concern" of the fairness test is the burden placed on the defendant. *World-Wide Volkswagen*, 444 U.S. at 292. Due process is offended "when the burden placed upon the defendant is incommensurate with the benefits and protections the defendant has received within the forum." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 n.30 (11th Cir. 2009). Generally, however, the burden imposed on out-of-state defendants is not unfair because "modern transportation and communications have made it much less burdensome" for a party to defend itself in a foreign jurisdiction. *Burger King*, 471 U.S. at 474 (quoting *McGee*, 355 U.S. at 223). Here, Chip Voigt has not shown that requiring him to litigate in Florida is unfair, and modern transportation and communications make it reasonable to hale him into a Florida court.

Florida has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *Id.* at 473 (quoting *McGree*, 355 U.S. at 223); *see*

12

*Liciardello*, 544 F.3d at 1288 ("Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida."). "Moreover, where individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities." *Burger King*, 471 U.S. at 474 (quoting *Kulko v. Cal. Superior Ct.*, 436 U.S. 84, 96 (1978)). R&R also has a strong interest in litigating in Florida to obtain comprehensive relief from an alleged international conspiracy of trademark infringement, which is vindicated by exercising personal jurisdiction in Florida. *See* Dkt. 74 at 10. Finally, the several States share an equal interest in preventing trademark infringement and Florida's interest in protecting its residents from infringement overcomes another forum's interest in adjudicating this dispute.

In sum, Chip Voigt has not "presented the requisite 'compelling case' that exercising jurisdiction over him would be constitutionally unfair." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1274 (11th Cir. 2010) (quoting *Burger King*, 471 U.S. at 477). Personal jurisdiction is therefore proper.

## III.   THE DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.   Introduction

The Second Amended Complaint generally alleges that Defendants conspired to infringe R&R's mark by manufacturing and selling similar games through third-party interactive websites, including Amazon.com. *See, e.g.*, Dkt. 77 ¶¶ 44, 47–50. Specifically, R&R alleges four causes of action: (1) federal trademark infringement, (2) inducement of trademark infringement, (3) contributory infringement, and (4) trademark infringement conspiracy. Defendants Rolf Vandoren, James B. Whitney, Smart N.V., Smart Toys and Games, Inv., Carl E. Voigt, III, and Carl E. Voigt,

13

IV move to dismiss the Second Amended Complaint as a shotgun pleading and for failure to state a claim on which relief may be granted.

**B.**    **Standard**

A complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule does not require detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"The complaint must contain enough facts to make a claim for relief plausible on its face." *Id.* at 1324-25. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd sub nom. Ashcroft v. Iqbal*, 556 U.S. 672 (2009)). Where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.*

Although it is axiomatic that the Court must accept as true all of the allegations contained in the complaint, this tenet is "inapplicable to legal conclusions." *Id.* at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. All reasonable inferences must be drawn in the plaintiff's favor. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

**C.   Discussion**

*1.   The Second Amended Complaint Is Not a Shotgun Pleading.*

Defendants first argue that the Second Amended Complaint is a shotgun pleading that fails to comply with Rule 8(a) and the standards announced in *Twombly* and *Iqbal*. Specifically, Defendants contend that the Second Amended Complaint fails to put Defendants on fair notice of the claims against them because the allegations lump together numerous Defendants in each count and do not discern the exact conduct for which each Defendant is alleged to be liable. This argument is unpersuasive. The Second Amended Complaint plainly alleges, with one exception discussed *infra*, that all four counts are stated against all Defendants. R&R constrains its allegations to a "short and plain statement" of the causes of action with sufficient factual detail, and the pleaded facts permit the inference of more than a mere possibility of misconduct. Dismissal as a shotgun pleading is not warranted.[8]

---

[8]The only argument made by Defendants in their motion with regard to Counts II and III is that they are part of a shotgun pleading using conclusory allegations and lumping multiple defendants together. Defendants do not argue, for example, that Count II and III fail to sufficiently allege the elements of inducement of infringement or contributory infringement.

### 2.   *R&R Does Not State a Claim for Direct Trademark Infringement Against the Individual Defendants.*

To the extent, however, R&R attempts to state a cause of action for direct trademark infringement against Defendants Carl E. Voigt, III, Carl E. Voigt, IV, Rolf Vandoren, and James B. Whitney, that claim must be dismissed. The only paragraph containing allegations of direct trademark infringement against these individual Defendants is Paragraph 71. At most, paragraph can be read to cumulatively allege a conspiracy to commit trademark infringement involving the individual Defendants. *See* Dkt. 77 ¶ 71 ("Upon information and belief, [the individual] Defendants . . . *conspired together to initiate* a coordinated marketplace penetration of the infringing game bearing the confusingly similar name(s) . . . .") (emphasis added). It does not allege that the individual Defendants intentionally adopted a mark confusingly similar to the one owned by R&R. *See Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010) (A prima facie showing of trademark infringement requires a plaintiff to show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.).

### 3.   *Count IV States a Claim for Conspiracy to Infringe R&R's Trademark.*

Defendants argue not only that Count IV is a shotgun claim that lumps multiple Defendants together, but that Count IV fails to state a claim for a civil conspiracy. Under Florida law, a civil conspiracy requires (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Group, Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012) (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)). "General allegations of conspiracy are

16

inadequate." *World Class Yachts, Inc. v. Murphy*, 731 So. 2d 798, 799 (Fla. 4th DCA 1999).
Allegations of conspiracy must "set forth clear, positive and specific allegations of civil conspiracy."
*Id.* Count IV sufficiently alleges a conspiracy by stating which parties conspired (all Defendants),
the unlawful act resulting from the conspiracy (trademark infringement), and damage to R&R as a
result. Dkt. 77 ¶ 98.

In sum, Count I does not state a claim for trademark infringement as to Defendants Carl E.
Voigt, III, Carl E. Voigt, IV, Rolf Vandoren, and James B. Whitney, but in all other respects the
Second Amended Complaint states claims for trademark infringement, inducement of infringement,
contributory infringement, and conspiracy.

## IV.   CONCLUSION

Accordingly,

1) The Voigt Defendants' Motion to Dismiss (Dkt. 86) is GRANTED *in part* and DENIED
*in part*.

2) The claims against Defendant Carl E. Voigt, III are DISMISSED *without prejudice* for
lack of personal jurisdiction. The Clerk is directed to TERMINATE Defendant Carl E. Voigt, III
from the docket.

3) In all other respects, the motion (Dkt. 86) is DENIED.

4) Defendants' Motion to Dismiss (Dkt. 88) is GRANTED *in part* and DENIED *in part*.

5) To the extent Count I attempts to state a claim for direct trademark infringement against
Defendants Carl E. Voigt, IV, Rolf Vandoren, and James B. Whitney, that claim is DISMISSED

without prejudice.[9]

6) In all other respects, the motion (Dkt. 88) is DENIED.

**DONE AND ORDERED** this _12__ day of July, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[9]Dismissal with prejudice is generally appropriate after an unsuccessful third attempt to plead the same cause of action. *See Nettles v. City of Leesburg–Police Dep't*, 415 Fed. Appx. 116 (11th Cir. 2010); *Anderson v. Vanguard Car Rental USA, Inc.*, 304 Fed. Appx. 830 (11th Cir. 2008). Notwithstanding, discovery may provide Plaintiff with facts sufficient to state a claim against the individual defendants for direct trademark infringement. Plaintiff should not seek leave to amend to state such a claim, however, without facts to support the claim.